**In re GENERAL DEVELOPMENT CORPORATION, et al.,**
**Debtors.**

**Bankruptcy No. 90–12231–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Feb. 25, 1992.

Mark D. Bloom, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, Fla., for debtor.

Michael G. Williamson, Maguire, Voorhis & Wells, Orlando, Fla., for creditors committee.

Mark Freund, Mark Freund, P.A., Tallahassee, Fla., for Continental Cas. Co. (CCC).

Kent Weissinger, Office of the Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for Dept. of Revenue (DOR).

## MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION TO CLAIM FILED BY FLORIDA DEPARTMENT OF REVENUE

### (Amended Claim No. 19663)

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came before the Court for hearing on Wednesday, December 11, 1991 at 2:00 p.m., upon the Debtor's Objection to Claim Filed by the Florida Department of Revenue and Motion for Reclassification of Such Claim (Amended Claim No. 19663). The Court having read and considered the Objection, the Responses filed by the Department of Revenue ("DOR" or the "Department") and Continental Casualty Company ("CCC" or "Continental"), the authorities cited by the parties and other matters of record, heard the argument of counsel and otherwise been duly advised in the premises, issues this Memorandum Decision and Order sustaining the Objection,

granting the Motion and reclassifying the DOR Claim as a general unsecured claim.

## FINDINGS OF FACT

This contested matter arises out of a claim by the Department for corporate income taxes for the tax years 1974 through 1976, which have been the subject of litigation between the Debtor and DOR since 1981. Specifically, the Debtor objects to Amended Claim No. 19663, filed as a priority claim by the Department on October 9, 1990, and moves to reclassify the Claim as a general unsecured claim.

The facts are essentially undisputed by the parties, such that the Court may dispose of the Objection as a matter of law. A brief history of the events leading up to the filing of the Amended Claim is in order.

On February 2, 1979, the Department issued a notice of deficiency to GDC, proposing a net tax deficiency in the amount of $1,909,110.00. On March 30, 1979, GDC timely protested this notice under Florida law. Thereafter, on January 13, 1981, the Department issued a revised notice of deficiency, reducing the proposed tax deficiency to $1,219,379.00.

On March 6, 1981, GDC protested the revised notice of deficiency, and on March 25 attended an informal conference with the Department to discuss the issues raised in the protest. Following the informal conference, in an undated letter delivered on or about April 18, 1981, the Department sustained the adjustments and deficiencies proposed in the revised notice. The letter was intended to constitute the Department's Notice of Decision with respect to the deficiency, and constitutes the final administrative action taken by the Department with respect to the taxes.

On June 18, 1981, GDC filed a complaint in the Leon County Circuit Court, challenging as illegal and in violation of Florida statutes the Department's determination that the additional taxes were due. After initially filing a corporate bond to cover the tax assessment and interest, GDC obtained a surety bond on October 14, 1981. The bond has been periodically renewed and increased in amount to cover the accruing interest, and remained in effect as of the date of the Chapter 11 filings. CCC is the surety under the bond, and has filed its own separate claim against the estate.

Upon the commencement of these Chapter 11 cases, the controversy between DOR and the Debtor shifted to this Court. On April 30, 1990, the Department timely filed a proof of claim asserting a priority claim in the total amount of $2,677,909.37, representing $1,219,379.00 in corporate income taxes for the 1974–76 tax years plus $1,458,530.37 in prepetition interest. Thereafter, on June 4, 1990, the Department filed a Motion to Determine Applicability of Stay or for Relief Therefrom, seeking leave to proceed to judgment in the litigation pending in the Leon County Circuit Court.

Following a continuance of the hearing on the DOR stay relief motion, the Debtor filed a Motion to Approve Settlement of Department of Revenue Tax Claim. The resulting Order dated September 14, 1990 ratified and approved the terms of a settlement which liquidated the amount of the Department's claim at $1,958,530.00 and permitted entry of a consent judgment in that amount in the state court action. Thereupon, the Leon County Circuit Court entered the consent judgment on or about September 28, 1990.[1]

The settlement order expressly reserved the rights of the parties with respect to the issue of whether the DOR claim is entitled to treatment as a priority claim under the Bankruptcy Code. It is this issue which the Objection now calls upon the Court to address.

## CONCLUSIONS OF LAW

The parties are in agreement that the sole basis for the Department's asserted priority is Section 507(a)(7)(A)(iii) of the Bankruptcy Code, 11 U.S.C.

---

1. Notwithstanding the entry of that judgment and the Department's subsequent efforts to enforce the bond against CCC as surety, the DOR claim remains unpaid. By separate Order the Court has disposed of the Debtor's Objection to the Claim filed by CCC in respect of that bond.

§ 507(a)(7)(A)(iii). Pursuant to that provision, allowed unsecured claims of governmental units are afforded a seventh priority, to the extent that such claims are for—
  (A) a tax on or measured by income or gross receipts—
    (iii) . . . not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

Thus, the basic issue before the Court is whether, as the Debtor contends, the tax was assessed upon issuance of the DOR Notice of Decision in April of 1981 or, as the Department contends, only upon entry of the consent judgment in the Leon County Circuit Court in September of 1990. If the Debtor is correct and the tax was assessed in April of 1981, the claim is not entitled to priority; if the assessment did not occur until September of 1990, then the tax was assessable after the commencement of the case and the claim is entitled to priority under Section 507(a)(7)(A)(iii).

■ The initial issue over which the parties disagree is the question of what law the Court should apply to determine when the tax was assessed. The Department contends that in enacting Section 507(a)(7) Congress used the term "assessed" in the context of the Internal Revenue Code and with direct reference to the federal taxation scheme, such that the Court must look by analogy to federal law. The Debtor argues, and the Court agrees, that this analysis simply misses the mark. By its own terms, Section 507(a)(7)(A)(iii) refers to a tax assessed or assessable "under applicable law," which the Court interprets to mean the laws of the State of Florida pursuant to which the taxes here in issue were imposed in the first instance.

This interpretation of Section 507(a)(7)(A) finds support not only in the plain language of the statute, but within the case law as well. As noted, Section 507(a)(7)(A)(iii) refers specifically to "applicable law," which the Court construes to mean the laws governing assessment and collection of the particular tax for which a priority is asserted. Notably, Section 507(a)(7)(A)(ii) contains no similar reference, and courts interpreting that subsection have looked to the plain language of subsection (A)(7)(iii) in reaching this same result. The district court's analysis in the case of *In re Hartman*, 110 B.R. 951 (D.Kan.1990), is directly on point:

'Assess' prominently appears at Sections 507(a)(7)(A)(ii) and (iii) . . . of the Bankruptcy Code. Generally, if the same word is used in different sections of a body of law, the word is given the same meaning in each section. . . . In Section 507(a)(7)(A)(iii), the determination of whether a tax is 'assessable' is contemplated to involve applicable tax law. . . . Congress' decision not to refer to the Internal Revenue Code in Section 507(a)(7)(A)(ii) or in a relevant definitional section is plausibly explained by the need for that provision to be adaptable to a variety of federal, state and local taxes on or measured by income or gross receipts.

Id. at 955. *See also In re Oldfield*, 121 B.R. 249, 252 (Bankr.E.D.Ark.1990) (same analysis of Section 507(a)(7)(A)).

This same construction also finds support within this District. *In re Torrente*, 75 B.R. 193, 195 (Bankr.S.D.Fla.1987) (applying Internal Revenue Code as "applicable tax law" in case involving claim of priority for federal income taxes pursuant to Section 507(a)(7)(A)(iii)).

■ Having determined that the ultimate issue before it is governed by the law of Florida, the Court turns next to a consideration of that law to determine when the subject taxes were assessed. The bond posted by the Debtor with the Leon County Circuit Court reflected on its face that it was so posted pursuant to § 214.26, Fla. Stat. (1979) [2], which provides:

2. The Court regards the subsequent repeal of this provision to be immaterial, in that there is no question that it was in effect at the time the Leon County Circuit Court action was commenced. Moreover, upon repeal § 214.26 was replaced with § 72.011, Fla.Stat. (1981), which contains a similar requirement of payment or filing of a bond. Section 72.011(3), Fla.Stat. (1981).

**214.26** *Actions involving legality of tax or penalty.* In any case involving the legality of any tax or penalty *assessed* under this chapter, the complainant shall, except where the taxes *assessed,* including penalties and interest, have been paid to the department prior to the institution of suit, tender into court and file with the complaint the full account of the *assessment* complained of, including penalties and interest, or file with the complaint a cash bond or a *surety bond* endorsed by a surety company authorized to do business in this state or by such sureties as may be approved by the court, conditioned to satisfy any judgment or decree in full, including the taxes complained of, costs, penalties, and interest.

(emphasis added). The prominent use of the words "assessed" and "assessment" in § 214.26, together with other applicable Florida law, persuades the Court that assessment of the tax occurred prior to the Debtor's circuit court action, when the Department issued its Notice of Decision in April of 1981.

In reaching this result, the Court also relies on other provisions of Florida statutory law, both past and present. Section 26.012(2)(e), Fla.Stat. (1979) granted exclusive original jurisdiction to the state circuit courts in all cases involving the legality of any tax assessment. DOR has never contested the jurisdiction of the circuit court, but in fact sought and obtained relief from the automatic stay in order to proceed against the Debtor in that court, and subsequently filed a motion in that court to enforce the bond against CCC.

Further support for the conclusion that the taxes were assessed in 1981 exists in Section 214.03(2), Fla.Stat. (1979). That section provides that when a taxpayer protests a notice of deficiency, as GDC did in 1981, the amount of the deficiency "shall be deemed assessed ... on the date when the decision of the *Department* with respect to the protest becomes final...." *Id.* (emphasis added). That date was sometime in April of 1981, when the Department issued its Notice of Decision in the form of an undated letter. Thereupon GDC commenced its action in the circuit court, and

posted a surety bond pursuant to Section 214.26, Fla.Stat.

■ The Department contends that because GDC had continuously contested the liability for the taxes since the filing of the Leon County Circuit Court action, the assessment of those taxes never became final until that court entered the consent judgment in September of 1990. The basic premise for this argument is that an "assessment" does not occur until the taxes are finally determined to be due and owing and are subject to collection after the taxpayer's exhaustion of all administrative and judicial remedies.

Whatever simplistic appeal this argument may have, it simply cannot withstand a literal reading of the statutory language upon which this Court must rely. Insofar as the Department was concerned, the taxes were due and owing and subject to collection when the Notice of Decision was issued in April of 1981. It is for this reason that in order to contest the legality of those taxes in the circuit court GDC was required to post a surety bond pursuant to § 214.26, Fla.Stat. (1979). The purpose of this bond is precisely to ensure that taxes assessed by DOR are collectible at such time as their legality is upheld by the courts.

This conclusion is also supported by the Florida Legislature's subsequent enactment of Section 72.011, Fla.Stat. (1981), which provides in pertinent part:

(1) A taxpayer may contest the legality of any assessment or denial of refund of a tax ... by filing an action in circuit court;

.    .    .    .    .

(2) No action may be brought to contest an assessment of any tax, interest or penalty assessed ... after 60 days from the date the assessment becomes final.

Effective as of October 1, 1981, Section 72.011 was intended to clarify existing law. Taken together, Sections 72.011(1) and (2) reinforce the Court's conclusion that the DOR assessment became final in April of 1981, and that GDC timely commenced an

action in the Leon County Circuit Court to contest the legality of that assessment within sixty days of its finality.

The Department draws an analogy between the Debtor's circuit court action and a taxpayer's contest if a federal tax in the U.S. Tax Court, and argues that under the federal scheme the tax cannot be assessed until the Tax Court action becomes final and all appeals are exhausted. Where the "applicable law" which governs the issue of assessment under 11 U.S.C. § 507(a)(7)(A)(iii)—in this case, the law of Florida—appears so clear on its face, resort to analogy is inappropriate. In any event, the Court views the Debtor's circuit court action as more analogous to a federal taxpayer's payment of the tax and suit for refund in the District Court, in that the surety bond posted in accordance with Section 214.26, Fla.Stat., represents the "functional equivalent" of payment. *See In re H & H Beverage Distributors,* 850 F.2d 165 (3rd Cir.1988), *cert. den.* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988) (Pennsylvania tax law analogous to federal law). The more appropriate Florida analogy to a federal tax court action would be an administrative proceeding under Chapter 120, Fla.Stat., which requires neither payment of the tax nor the posting of a surety bond. GDC, however, elected not to pursue administrative remedies but to commence the action in the Leon County Circuit Court and post the bond.

On the basis of these authorities, the Court concludes that under applicable Florida law the corporate income taxes payable by the Debtor for the tax years 1974 through 1976 were assessed in April of 1981, some nine years before the commencement of this Chapter 11 case. Thus, the taxes were "assessed before ... the commencement" of this Chapter 11 case, and are not entitled to priority under 11 U.S.C. § 507(a)(7)(A)(iii). For the Department to contend otherwise simply ignores ten years of litigation commenced with the posting of a statutory bond, and the express language of the relevant statutory provisions. Accordingly, it is

ORDERED AND ADJUDGED that the Debtor's Objection to Amended Claim No. 19663 be and hereby is SUSTAINED, and the claim is hereby RECLASSIFIED as a general unsecured claim without priority of any kind.

DONE AND ORDERED.