In re **GENERAL DEVELOPMENT CORPORATION, et al.,**
Debtors.

**FLORIDA DEPARTMENT OF REVENUE and Continental Casualty Company, Appellants,**

v.

**GENERAL DEVELOPMENT CORPORATION,**
Appellee.

Nos. 93–1665–CIV, 90–12231–BKC–AJC.

United States District Court, S.D. Florida.

March 22, 1994.

Kent L. Weissinger, Florida Dept. of Revenue, Tallahassee, FL, for Florida Dept. of Revenue.

Thomas J. Guilday, Huey, Guilday, Kuersteiner & Tucker, P.A., Mark Freund, Mark Freund, P.A., Tallahassee, FL, for Continental Cas. Co.

Arthur J. England, Jr., Mark D. Bloom, Paige A. Harper, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, for General Development Corp.

### *ORDER REVERSING DECISION OF BANKRUPTCY COURT*

ARONOVITZ, District Judge.

This is an appeal by Appellants Florida Department of Revenue ("DOR") and Continental Casualty Company ("CCC") from a Memorandum Opinion and Order Sustaining Objection to Claim Filed By Florida Department of Revenue entered on February 25, 1992 by Judge A. Jay Cristol of the United States Bankruptcy Court for the Southern District of Florida. *See In re General Development Corp.*, 138 B.R. 128 (Bankr.S.D.Fla. 1992). This appeal has been referred to by the parties and the Court as the "Priority Appeal."[1]

---

1. This appeal was once consolidated with another appeal involving the same parties and facts under Case No. 92–1162–CIV–ARONOVITZ. After an examination of the file and hearing oral argument thereon, the issues raised by the two appeals and the totality of the circumstances, the Court deemed it appropriate to consider the appeals separately, and the appeals were separated into two discrete actions: (1) the *"Nunc Pro Tunc* Appeal" under Case No. 93–1666–CIV–ARONOVITZ; and (2) the "Priority Appeal" under Case No. 93–1665–CIV–ARONOVITZ. This opinion concerns only the Priority Appeal.

The Court has carefully considered the briefs on appeal, oral argument of counsel, the record on appeal, the decision of the lower court and the applicable law, and is otherwise fully advised in the premises. For the following reasons, this Court RE-VERSES the decision of the Bankruptcy Court.

### Factual and Procedural Background

This matter arises from a tax claim by DOR against Appellee General Development Corporation (the "Debtor") for corporate income taxes for the years 1974, 1975 and 1976. The following relevant facts are undisputed.

On February 2, 1979, DOR issued a notice of deficiency to the Debtor, stating a net tax deficiency of $1,909,110.00 for the years 1974 through 1976. The Debtor timely protested this notice and thereafter on January 13, 1981, DOR issued a revised notice of deficiency, reducing the tax deficiency to $1,219,-379.00. The Debtor protested the revised notice, and after a meeting between the parties, DOR sustained the amount stated in the revised notice and issued a Notice of Decision with respect to the deficiency in the form of a letter delivered on or about April 18, 1981.

Attached to the Notice of Decision was a copy of DOR Form 890, entitled "Florida Department of Revenue Protest and Appeals Opportunities." Form 890 provided that a taxpayer may appeal DOR's decision by filing a petition for an administrative hearing pursuant to § 120.57, F.S., or a suit in the State of Florida circuit court. Paragraph 3 of Form 890 provided the following:

In the event that you do not avail yourself of any of the opportunities for conferences or review noted above within 60 days of the date of the Department's letter stating its proposed action, that action will become final and no further opportunities for administrative conferences or hearing will be available. If the Departmental action proposes a deficiency and no action is taken by the taxpayer within the 60 day period noted above, a demand for payment of the deficiency, plus penalties and interest, will follow immediately.

The Debtor timely appealed the Notice of Decision on June 18, 1981 by filing a complaint against DOR in the circuit court for the Second Judicial Circuit in Leon County, Florida (the "state court action"), challenging the alleged deficiency as illegal and unconstitutional. Appellant CCC is the surety on the bond that the Debtor posted in the state court action.

On July 31, 1981, DOR issued to the Debtor a "Statement of Tax Due," demanding payment of the tax due. The Debtor's counsel responded in a letter and requested the withdrawal of the Statement on the ground that the state court action stayed the "proposed deficiency and collection on the same" under Florida law. DOR thereafter withdrew the Statement of Tax Due.

Approximately nine years later on April 6, 1990, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. At that time, the state court action between DOR and the Debtor was still pending. DOR filed a priority proof of claim in the bankruptcy proceeding in the amount $2,677,909.37. Subsequently, the parties settled the state court action for $1,958,530.00, which was approved by the Bankruptcy Court by Order dated September 14, 1990 (the "Settlement Order"). On September 28, 1990, the state court entered a consent final judgment against the Debtor in the amount of $1,958,530.00 in accordance with the Bankruptcy Court's Settlement Order.

Following DOR's submission of its tax claim as a priority unsecured claim in the bankruptcy proceeding, the Debtor objected. It argued that the claim is a general unsecured claim, not entitled to priority under § 507(a)(7)(A)(iii) of the Bankruptcy Code because the tax was assessed in 1981, nine years before the bankruptcy filing. DOR responded that the tax deficiency never became final by virtue of the state court action and that the tax and interest remained assessable until the state court action was resolved, which was after the bankruptcy filing.

Following a hearing on December 11, 1991, the Bankruptcy Court sustained the Debtor's objection and reclassified DOR's tax claim as a general unsecured claim. *See In re Gener-*

*al Development Corp.,* 138 B.R. 128 (Bankr. S.D.Fla.1992). The lower court concluded that the tax was assessed before bankruptcy upon the issuance of DOR's Notice of Decision on April 18, 1981, rather than upon the entry of the state court consent judgment on September 28, 1990. Therefore, DOR's tax claim was not entitled to priority under 11 U.S.C. § 507(a)(7)(A)(iii). DOR's and CCC's subsequent motions for rehearing were denied. This appeal followed.

**Discussion**

The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a) (West 1993).

A. "ASSESSMENT" OF A TAX FOR PURPOSES OF DETERMINING PRIORITY UNDER 11 U.S.C. § 507(a)(7)(A)(iii)

The sole basis for DOR's asserted priority is § 507(a)(7)(A)(iii) of the Bankruptcy Code. That section affords a seventh priority for allowed unsecured claims of governmental units to the extent that such claims are for:

(A) a tax on or measured by income or gross receipts—

(iii) ... not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

11 U.S.C. § 507(a)(7)(A)(iii). The Bankruptcy Code does not provide a definition for the term "assessed" or "assessable."

■ Succinctly stated, the issue on appeal is when does a Florida income tax assessment take place for purposes of determining priority of a tax claim under § 507(a)(7)(A)(iii) of the Bankruptcy Code. This issue is a pure question of law, subject to *de novo* review. *In re Chase & Sanborn Corp.,* 904 F.2d 588, 593 (11th Cir.1990); *In re Sublett,* 895 F.2d 1381 (11th Cir.1990). The Debtor contends the tax was assessed upon the issuance of DOR's Notice of Decision in April of 1981 before bankruptcy and therefore, DOR's tax claim is not entitled to priority. The lower court agreed. DOR and

CCC argue on appeal that the assessment occurred after the commencement of bankruptcy upon the entry of the consent judgment in September of 1990 and therefore, DOR's tax claim is entitled to priority under § 507(a)(7)(A)(iii). The Court has conducted a *de novo* review and agrees with DOR and CCC for the reasons stated below.

1. *"Assessable ... Under Applicable Law"*

A tax claim is afforded seventh priority under § 507(a)(7)(A)(iii) if it is assessable "under applicable law" or "by agreement" after the commencement of bankruptcy. The Court first will consider the "under applicable law" basis for priority.

As a preliminary matter, there is a dispute regarding the "applicable law" that governs the instant issue. Both DOR and the Debtor agree with the lower court's application of Florida state law. CCC, on the other hand, claims that federal law should be applied in the interest of uniformity.

■ This Court finds that the court below applied the proper law. The lower court correctly construed the phrase "applicable law" to mean "the laws governing assessment and collection of the particular tax for which a priority is asserted." *See In re General Development Corp.,* 138 B.R. at 130. If Congress had intended federal law to determine the question of "assessment" under § 507(a)(7)(A)(iii), regardless of whether the tax at issue is a local, state or federal tax, it could have easily specified "federal law" rather than "applicable law." As suggested by other courts, Congress intended § 507(a)(7)(A)(iii) to be adaptable to a variety of federal, state and local taxes.[2] Since the tax at issue is a Florida state tax, the lower court properly concluded that Florida state law is the applicable law.

■ Having determined that the ultimate issue is governed by Florida law, the Court now considers whether DOR's tax claim was

---

**2.** *See, e.g., In re Hartman,* 110 B.R. 951, 955 (D.Kan.1990) (determination of "assessable" under § 507(a)(7)(A)(iii) is contemplated to involve applicable tax law so as to be adaptable to a variety of federal, state and local taxes); *In re*

*Oldfield,* 121 B.R. 249, 252 (Bankr.E.D.Ark.1990) (same). *See also, In re Lemke,* 145 B.R. 1005 (Bankr.D.Id.1991) (applied state law to determine whether state income tax was subject to priority under § 507(a)(7)(A)(iii)).

"assessed" in 1981 under Florida law as determined by the lower court. In reaching that conclusion, the lower court relied on Fla.Stat. § 214.26, § 26.012(2)(e), § 214.03(2) and § 72.011. Three of these four sections, however, are not relevant.

Sections 214.26 and 26.012(2)(e) are jurisdictional statutes and clearly do not speak to the issue at hand.[3] Section 72.011 states that "[n]o action may be brought to contest an assessment" of tax "after 60 days from the date the assessment becomes final." *See* Fla.Stat. § 72.011 (1981). The Debtor argues that § 72.011 suggests that an assessment must be final before suit can be brought in state court. That argument is irrelevant to this case as § 72.011 became effective on October 1, 1981 and therefore, was not Florida law at the time the Notice of Decision was delivered to the Debtor on April 18, 1981. Section 72.011 thus is inapplicable.

The remaining statute upon which the lower court relied—§ 214.03(2)—is directly on point. Entitled "Assessment," section 214.-03(2) provided the following:

> (2) Whenever a notice of deficiency has been issued, the amount of the deficiency shall be deemed assessed on the date provided in section 214.08 if no protest is filed or, if a protest is filed, on the date when the decision of the department with respect to the protest becomes final.

Fla.Stat. § 214.03(2) (1979).

Section 214.08, in turn, provided in pertinent part that:

> Upon the expiration of 60 days after the date on which it was issued ..., a notice of deficiency shall constitute an assessment ..., *except* for amounts as to which the taxpayer shall have filed a protest with the department under § 214.11.[4]

*See* Fla.Stat. § 214.08 (1979) (emphasis added). The lower court apparently overlooked the "except" clause in § 214.08 in its decision. The effect of that clause is that a notice of deficiency does not constitute an assessment as to those amounts challenged by the taxpayer. In those situations where the taxpayer does file a timely protest, Florida statutory law specifies the date of assessment as "the date when the decision of the department with respect to the protest becomes final." *See* Fla.Stat. § 214.03(2). "Finality" is therefore the key inquiry.

The Debtor argues that DOR's decision became "final" at the end of the administrative process when DOR had calculated and determined the amount of the Debtor's tax liability. It construes "finality" as the conclusion of the administrative process with respect to a particular tax claim. It, however, cites no direct legal authority to substantiate this position. DOR and CCC, on the other hand, maintain that when a taxpayer challenges the tax deficiency by filing a lawsuit, "finality" occurs at the end of the judicial process when the protest has been judicially resolved. Thus, in this case, DOR's decision was not final until the Debtor's objections had been fully adjudicated in the state court action. Based upon a review of the evidence presented and the applicable law, the Court agrees with DOR and CCC and finds that DOR's decision regarding the amount of the Debtor's tax deficiency, as set forth in the Notice of Decision, was not "final" within the meaning of Fla.Stat. § 214.-03(2) until the state court action, as between DOR and the Debtor, had concluded.

Having examined the Notice of Decision, it is clear to this Court that the Notice of Decision was not DOR's final determination of the claimed deficiency but rather, a mere proposal. The Notice of Decision itself states that "should you not agree with our *proposals* and since this letter constitutes our Notice of Decision, the appeals opportunities

---

**3.** The crux of Fla.Stat. § 214.26 was a requirement that in any case involving the legality of any tax or penalty assessed, the complainant deposit with the court the full amount of the assessment complained of, or file a cash bond or surety bond. *See* Fla.Stat. § 214.26 (1979). That statute did not deal with the issue of when a tax is "assessed." Neither did Fla.Stat. § 26.-012(2)(3) (1979). That section simply granted

exclusive original jurisdiction to the state circuit courts in all cases involving the legality of any tax assessment. *See* Fla.Stat. § 26.012(2)(3) (1979).

**4.** Although § 214.11 was repealed in 1978, it was still referred to in the 1979 version of § 214.08.

available ... are set forth in the enclosed form DOR–890." (emphasis added).

In addition, Form 890 is replete with language indicating that the Notice of Decision was merely DOR's proposed decision regarding the Debtor's tax deficiency. It clearly describes the Notice of Decision as the "Department's letter *stating its proposed action.*" (emphasis added). It further directs that a protest should be submitted "within 60 days from the date of the letter which transmits the report or notice that *proposes a deficiency or assessment* ..." (emphasis added).[5] Most significantly, Form 890 plainly states that failure to timely object to DOR's "proposed action" will result in the DOR's decision becoming "final":

> In the event that you do not avail yourself of any of the opportunities for conferences or review noted above within 60 days of the date *of the Department's letter stating its proposed action, that action will become final* ... If the Departmental action *proposes* a deficiency and no action is taken by the taxpayer within the 60 day period noted above, a demand for payment of the deficiency, plus penalties and interest, will follow immediately.

(emphasis added). While Form 890 does not expressly state that in the event a timely appeal is taken, DOR's proposed action does not become final, the Court finds no other logical inference.

Furthermore, it appears that in 1981 the Debtor itself was treating the claimed tax deficiency in DOR's Notice of Decision as a mere proposal. The evidence shows that the basis on which the Debtor's attorney requested DOR to withdraw the Statement of Tax Due issued in July of 1981 was its position that the pending state court action stayed, in counsel's own words, the "proposed deficiency." ·

The aforementioned evidence in the aggregate clearly establish that DOR's Notice of Decision was not a final determination of the Debtor's tax deficiency but rather, was a proposal of the deficiency. The lower court's decision to the contrary is erroneous.

Case law further support this Court's conclusion. In *King v. Franchise Tax Board of the State of California,* 961 F.2d 1423 (9th Cir.1992), the United States Court of Appeals for the Ninth Circuit was faced with the issue of when is a California income tax deficiency "assessed" for purposes of rendering the assessment nondischargeable under § 507(a)(7)(A)(ii). The tax board argued that its Notice of Proposed Additional Tax ("NPAT") did not fix the date of the assessment because at the time the notice was issued, the additional tax was only "proposed." It claimed that the tax is assessed when it becomes final.[6] The bankruptcy court agreed.

In affirming, the Ninth Circuit adopted the bankruptcy court's analysis of the meaning of the term "assessed." It agreed that an "assessment" is "a formal, discrete act with specific legal consequences," *citing In re Heritage Village Church and Missionary Fellowship,* 87 B.R. 401, 403 (D.S.C.), *affirmed,* 851 F.2d 104 (4th Cir.1988), as well as "a formal act of fixing of tax liability." *In re King,* 961 F.2d at 1426–27. The Ninth Circuit further stated that:

> ... it is common sense that a tax assessment, as a formal act with significant consequences, cannot occur before it is final.... Prior to this final date, the assessment is best described as a tentative calculation which the taxpayer has no obligation to pay.

*Id.* at 1427. *See also, H & H Beverage Distributors v. Department of Revenue of Pennsylvania,* 850 F.2d 165 (3d Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988) (Pennsylvania's issuance of "Notice of Audit Assessment" is not tantamount to a lien and therefore did not violate automatic stay).

---

**5.** Additionally, Form 890 states that the policy of DOR is to afford opportunity for a conference to all taxpayers "who believe they have reason to protest a *proposed deficiency, assessment* ... or any other Departmental determination adverse to the tax liability ..." (emphasis added).

**6.** It should be pointed out that the taxpayers in *King* did not avail themselves of the appeal opportunities available under the California statutory taxation scheme.

The *King* decision teaches that for there to be a tax "assessment," there must first be a liability or obligation to pay. The record in this case clearly shows that the Debtor was under no obligation to pay the proposed tax deficiency upon the issuance of the Notice of Decision in April of 1981, nor could DOR compel payment at that time. The Debtor's obligation to pay arose when the consent final judgment was entered by the state court on September 28, 1990.

The soundness of the *King* decision is supported by *In re Wines,* 122 B.R. 804 (Bankr. S.D.Fla.1991), *affirmed in part, reversed in part on other grounds,* 1992 WL 200602 (S.D.Fla.1992). The issue in that case was whether a *federal* income tax obligation was dischargeable under § 507(a)(7)(A). The Bankruptcy Court in that case ruled that the tax was not "assessed" until the tax court rendered a final decision on the objection to the deficiency:

> Because the debtor and his wife filed the Petition for Reconsideration *the creditor was prohibited from making an assessment on the 1984 deficiency until the tax court rendered a final decision.* In turn, the tax court proceedings were stayed by virtue of the filing of the bankruptcy. Accordingly, the Court finds that *the 1984 tax deficiency had not been assessed by the creditor,* and by operation of section 6213 of the Internal Revenue Code, the deficiency is assessable after the commencement of the case and is, therefore, nondischargeable.

*In re Wines,* 122 B.R. at 807 (emphasis added).

The Court is mindful of, and agrees with, the Ninth Circuit's statement that "[t]he determination of the precise date of assessment should be accomplished by reference to the specific tax code and practices involved." *In re King,* 961 F.2d at 1427. While the aforementioned cases dealt with statutory taxation schemes other than Florida's, their analysis nonetheless provide substantial guidance in ascertaining when a proposed tax deficiency is deemed to be "assessed" within the meaning of 11 U.S.C. § 507(a)(7). Moreover, the Debtor has specified no distinguishing aspect or provision in Florida's taxation statutes that would render the *King* and *Wines* analysis inapposite to this case, or that would compel the affirmance by this Court of the lower court's decision.

The case cited by the Debtor, *Florida Export Tobacco Co. v. Department of Revenue,* 510 So.2d 936 (Fla. 1st DCA 1987), *review denied,* 519 So.2d 986 (1987), does not advance its position. The Debtor claims that the court in that case concluded that a tax had been assessed when the Department of Revenue determined that a sales tax return was incorrect and communicated by letter to the taxpayer that the taxpayer was required to remit a tax deficiency. The facts of *Florida Export,* however, are quite different from those in this case.

The Department of Revenue in that case had issued a notice of tax due and demanded payment. The court held that "DOR's notice of tax due and demand for payment of the tax constitutes an assessment that is reviewable in circuit court." *Florida Export,* 510 So.2d at 942. Thus, an "assessment" occurred when DOR issued a notice of tax due and demand for payment. In this case, there was no valid notice of tax due and demand for payment of tax. The evidence shows that the "Statement of Tax Due" issued by DOR on July 31, 1981 was later withdrawn at the Debtor's request, and therefore, does not constitute a valid demand for payment.

Based upon the foregoing, the Court finds that the Notice of Decision issued to the Debtor did not constitute an "assessment" of tax under Florida law because the Debtor properly filed a timely protest. The Debtor's state court action precluded an "assessment" from being made until the state court rendered a final decision on the Debtor's objections to the Notice of Decision. That final decision was the consent final judgment entered on September 28, 1990. Thus, the Debtor's tax deficiency was not assessed by DOR in 1981 but remained assessable after the bankruptcy case was commenced on April 6, 1990. DOR's tax claim therefore is entitled to priority under 11 U.S.C. § 507(a)(7)(A)(iii).

### 2. *"Assessable ... By Agreement"*

█ The Court further concludes that DOR's tax claim is entitled to seventh priority under § 507(a)(7)(A)(iii) on the additional ground that said tax claim was "assessable ... by agreement, after, the commencement of the [bankruptcy] case." 11 U.S.C. § 507(a)(7)(A)(iii).

The earliest possible "by agreement" date is July 23, 1990, when the Debtor moved the lower court for approval of a settlement with DOR with regard to DOR's alleged tax deficiency claim. The latest possible "by agreement" date is September 28, 1990, the date on which the state court entered the consent final judgment against the Debtor.[7] In either case, both events occurred after the filing of the bankruptcy petition and therefore, DOR's tax claim was "assessable ... by agreement, after, the commencement of the case." 11 U.S.C. § 507(a)(7)(A)(iii). Accordingly, DOR's tax claim against the Debtor is entitled to priority under § 507(a)(7)(A)(iii).

Having concluded that DOR's tax claim is entitled to priority under 11 U.S.C. § 507(a)(7)(A)(iii), the Court need not address the Appellants' claims of estoppel and laches against the Debtor.

### Conclusion

For the reasons stated above, the Court hereby REVERSES the Bankruptcy Court's

7. At oral argument on the appeal, counsel for the Debtor argued that a consent final judgment is not an "agreement" within the meaning § 507(a)(7)(A)(iii), but rather, is a settlement of litigation. Where, as here, the parties have agreed to the amount of DOR's tax claim and a final judgment thereon entered upon the parties' consent, the Court fails to see the distinction the Debtor is attempting to make. It appears that the Debtor's argument in this regard is based on mere semantics.

8. As previously stated, this appeal presented the sole issue of whether DOR's claim against the Debtor for corporate income taxes in the amount of $1,958,530.00 for the years 1974, 1975 and 1976 is entitled to seventh priority under 11 U.S.C. § 507(a)(7)(A)(iii). By this ruling, the Court has held that DOR's tax claim is entitled to seventh priority. On March 15, 1994, this Court issued a ruling in the related *"Nunc Pro Tunc Appeal." See Continental Casualty Co. v. General Development Corporation and Florida Department of Revenue*, 165 B.R. 685 (S.D.Fla.1994). That appeal involved the failure of the Debtor to notify CCC of its settlement with DOR prior to the

Memorandum Opinion and Order Sustaining Objection to Claim Filed By Florida Department of Revenue, entered on February 25, 1992. As explained herein, the Court finds that the Florida Department of Revenue's corporate income tax claim at issue was assessable after the commencement of the bankruptcy case within the meaning of 11 U.S.C. § 507(a)(7)(A)(iii) and therefore, is entitled to priority thereunder.[8]

DONE AND ORDERED.

Bankruptcy Court's approval of the settlement agreement. The primary issue presented in that appeal was whether any resulting violations of CCC's procedural due process rights were properly cured by a *nunc pro tunc* order entered by the Bankruptcy Court. This Court answered that question in the affirmative.

The net effect of this Court's March 15, 1994 Order in the *Nunc Pro Tunc* Appeal, and this Order in the Priority Appeal, is a finding by this Court that the *nunc pro tunc* relief entered by the lower court was proper and that the Debtor owes DOR the sum of $1,958,530.00 for Florida corporate income taxes for the years 1974, 1975 and 1976 in accordance with the terms of their settlement agreement and a September 28, 1990 Consent Final Judgment entered against the Debtor by the Circuit Court for the Second Judicial Circuit in Leon County, Florida. By the ruling herein in the Priority Appeal, the Court adds only that DOR's claim is entitled to priority payment under 11 U.S.C. § 507(a)(7)(A)(iii). Whether DOR chooses to obtain satisfaction of its tax claim first from the Debtor or CCC remains in DOR's discretion. It, of course is entitled to only one satisfaction of its priority tax claim.