In re David G. WERNIMONT and Joleen M. Wernimont, Debtors.

David G. WERNIMONT and Joleen M. Wernimont, Plaintiffs,

v.

IOWA DEPARTMENT OF REVENUE AND FINANCE, Defendant.

Bankruptcy No. 93–51981XS.
Adv. No. 93–5200XS.

United States Bankruptcy Court,
N.D. Iowa,
Western Division.

Dec. 16, 1994.

Jerrold Wanek, Des Moines, IA, for plaintiffs.

Denise Dengler, Iowa Dept. of Rev. & Finance, Des Moines, IA, for defendant.

## ORDER RE: MOTION FOR SUMMARY JUDGMENT

WILLIAM L. EDMONDS, Chief Judge.

The matter before the court is the Wernimonts' motion for summary judgment. The Wernimonts claim that their income tax liability to the Iowa Department of Revenue and Finance (IDOR) for the 1985 tax year is dischargeable and that they may avoid the IDOR's tax liens. Hearing was held November 8, 1994, in Sioux City, Iowa. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (K).

The court bases its decision upon the following facts which are undisputed. The Wernimonts filed a Chapter 7 bankruptcy petition on December 9, 1993. In tax year 1985, the Wernimonts realized capital gains when they liquidated assets in their farming business. In 1986, the Wernimonts filed a 1985 Iowa income tax return reporting the amount due as $16,059.18. The Wernimonts did not submit a payment with their return. The IDOR issued a notice of assessment dated July 11, 1986 for tax, penalty and interest in the total amount of $17,247.55. Schutt Affidavit, Exhibit F. The Wernimonts filed a protest of the assessment with the IDOR on August 5, 1986. Debtors' Affi-

davit, Exhibit 1. The protest sought favorable capital gains treatment pursuant to federal legislation for insolvent farmers. On October 15, 1986, while the assessment was under protest, the IDOR filed a notice of tax lien in the amount of $17,514.49 with the Sac County Recorder. Exhibit 2. On April 20, 1990, the IDOR set off the Wernimonts' 1989 income tax refund against their tax liability for the 1985 tax year. Exhibit 3. On June 15, 1990, the IDOR issued a Letter of Findings sustaining the Wernimonts' protest and reducing the assessment by the sum of $6,187. The remaining 1985 tax liability was approximately $14,166.32. Exhibit 4. The administrative law judge issued a closing order in the matter on June 21, 1990. Exhibit 5.

On July 16, 1990, the Wernimonts advised the IDOR by letter that they had filed an amended federal income tax return for the 1985 tax year. Exhibit 6. On July 23, 1990, the IDOR issued a distress warrant for collection of the 1985 tax liability in the total amount of $13,780.01. Exhibit 7. The IDOR made various efforts to collect the tax. The Wernimonts filed an amended Iowa income tax return for the 1985 tax year which was received by the IDOR on July 19, 1991. Exhibit 13. The amended return requested a refund of $454.00. The IDOR issued a notice of assessment dated August 22, 1991, for the 1985 tax year in the following amounts: tax $20,645, penalty $478.25, interest $10,900.56, and fees $5.12, for a total assessment of $32,028.93. Exhibit 14. IDOR made the second assessment based on information received from the Internal Revenue Service after a federal audit. The Wernimonts filed a protest of the assessment on September 3, 1991. Exhibit 15. On September 9, 1993, the IDOR issued a notice of tax lien for the 1985 tax year in the total amount of $36,592.77. The notice of lien was filed with the Recorder on September 10, 1993, in Carroll County and Calhoun County. Exhibit 17. Administrative proceedings before the IDOR are pending.

## Discussion

■ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056, incorporating Fed.R.Civ.P. 56(c). IDOR has conceded that the material facts are not in dispute. The court concludes the matter is appropriate for summary judgment.

## Dischargeability of Tax Liability

■ A Chapter 7 discharge does not discharge an individual debtor from any debt:

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1). There is no claim by IDOR that the Wernimonts' return was untimely or fraudulent. For the tax liability to be nondischargeable, the IDOR must show that the taxes are of the kind or for the periods specified in §§ 507(a)(2) or 507(a)(7). Section 507(a)(2), dealing with certain claims in an involuntary case, is not applicable. Section 507(a)(7) gives seventh priority to several types of unsecured tax claims. Income taxes are treated in § 507(a)(7)(A), which gives priority to a claim:

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such as-

sessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

11 U.S.C. § 507(a)(7)(A). The Wernimonts' 1985 tax return was due more than seven years before the date of their Chapter 7 petition. Therefore, the tax liability does not come within the terms of § 507(a)(7)(A)(i). The issue is whether the IDOR's tax claim comes within §§ 507(a)(7)(A)(ii) or (iii), which depends on whether the tax liability has been assessed and, if so, the date of assessment.

■ The Bankruptcy Code does not define "assessment." Whether tax liability has been assessed for purposes of § 507(a)(7)(A) is determined by the laws governing the particular tax at issue. *Hartman v. United States (In re Hartman)*, 110 B.R. 951, 956 (D.Kan.1990). The Wernimonts' Iowa income tax liability is governed by Iowa Code Chapter 422, Division II, and applicable portions of the Iowa Administrative Code.

■ In *King v. Franchise Tax Board of the State of California (In re King)*, 961 F.2d 1423 (9th Cir.1992), the court considered several definitions of assessment. An assessment is "a formal, discrete act with specific legal consequences." *King*, 961 F.2d at 1426, citing *Clark v. United States (In re Heritage Village Church & Missionary Fellowship, Inc.)*, 87 B.R. 401, 403 (D.S.C.1988), *aff'd* 851 F.2d 104 (4th Cir.1988). Assessment of income tax involves the calculation and fixing of the amount payable. *King*, 961 F.2d at 1426, citing *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). Applying these definitions to Iowa law, the court concludes that IDOR's issuance of the notice of assessment is the act of assessment of Iowa income taxes.

After the IDOR examines a return and determines the correct amount of tax, and the taxpayer does not pay the tax, the IDOR issues a notice of assessment. Iowa Code § 422.25(1); Iowa Admin.Code § 701–43.2. The notice uses the term "assessment," which is distinguished from a notice of dis-

crepancy or notice of adjustment. *Cf.* Iowa Admin.Code § 701–43.1(1). The notice of assessment states a fixed amount due and payable. Iowa Code § 422.25(1) ("the amount determined by the department is the tax"); Iowa Admin.Code § 701–43.1(2) (payment required when assessment has been made, not upon receipt of notice of adjustment); Schutt Affidavit, Exhibit A, page 2 ("the tax is the amount of tax that the Department has determined to be due and payable").

■ A lien in favor of the State of Iowa attaches when the tax becomes due and payable, which is a lien upon all of the taxpayer's property. Iowa Code § 422.26. Issuance of the assessment begins a ten-year limitation period on the lien. *Id.* The taxpayer's rights of appeal are also triggered by the date of the notice of assessment. Iowa Code § 422.28; Iowa Admin.Code § 701–7.8. The appeal, or protest, of an assessment does not prevent the IDOR from filing a notice of the lien with a county recorder. Iowa Code § 422.26; Iowa Admin.Code § 701–9.5. The notice of lien states to the taxpayer that "you are assessed" and shows the date of the notice of assessment as the "date assessed." At the time of the notice of assessment, the IDOR has calculated and fixed the tax by way of a formal act with specific legal consequences. The court concludes that Iowa income taxes are assessed for the purposes of 11 U.S.C. § 507(a)(7)(A) when the IDOR issues the notice of assessment.

The IDOR argues that the Wernimonts' 1985 tax liability has not yet been assessed because their administrative appeal is pending. The IDOR cites *King v. Franchise Tax Board (In re King)*, 961 F.2d 1423, 1427 (9th Cir.1992), in which the court states that "it is common sense that a tax assessment, as a formal act with significant consequences, cannot occur before it is final." In *King*, the issue was the date on which California assesses an income tax deficiency for purposes of dischargeability in bankruptcy. The debtor had argued that assessment occurred when the tax board issued a "notice of proposed deficiency assessment." California law allows a taxpayer 60 days to file a protest of the proposed assessment. By statute, the amount of a California tax deficiency be-

comes "final" upon the expiration of the 60–day period or at the conclusion of the appellate process. *King*, 961 F.2d at 1425. The debtor-taxpayer had not filed a protest. The court held that assessment occurred upon the expiration of the 60–day period. This court believes that the difference between the tax schemes of Iowa and California distinguishes *King*. The Ninth Circuit noted that:

> Prior to this final date, the assessment is best described as a tentative calculation which the taxpayer has no obligation to pay. [T]he taxpayer is not required to make payment until after the assessment becomes final and after a second notice demanding payment is issued.

*King*, 961 F.2d at 1427. When the IDOR issues a notice of assessment, it has fixed the amount of tax that is immediately due and payable. Notwithstanding the taxpayer's rights to pursue administrative and judicial appeals, the act of assessment is completed. *Contra, Fletchall v. Iowa Department of Revenue and Finance*, No. 93–6165KW, 1995 WL 453344, slip op. at 7–8 (Bankr.N.D. Iowa, June 17, 1994).

The Florida tax scheme, discussed in *Florida Dept. of Revenue v. General Development Corp. (In re General Development Corp.)*, 165 B.R. 691 (S.D.Fla.1994), is also distinguishable from that in Iowa. The Florida DOR issues a "notice of deficiency." By statute, the notice does not constitute an assessment on the date of issuance. If the taxpayer files a protest, "the amount of the deficiency shall be deemed assessed ... on the date when the decision of the department with respect to the protest becomes final." *General Development Corp.*, 165 B.R. at 695, quoting Fla.Stat. § 214.03(2). In contrast, Iowa law does not delay the effect of a notice of assessment. In Iowa, an appeal of an assessed tax may lead to a "revision" and "adjustment" of the tax, but the Code does not state that the appeal effects a change in the date of assessment. Iowa Code § 422.28.

The IDOR argues that it is prohibited by law from collection activities while a tax assessment is under protest and that this fact supports a conclusion that the assessment is not final. The IDOR has not cited specific authority for this argument. Iowa law authorizes collection efforts immediately after assessment. If the IDOR believes that collection of taxes will be jeopardized by delay, a distress warrant may be issued against a taxpayer immediately after assessment and demand for payment. Iowa Code § 422.30; Iowa Admin.Code § 701–38.5. A distress warrant authorizes the sheriff to seize and sell the taxpayer's property, none of which is exempt from payment of the tax. Iowa Code § 422.26. The Wernimonts' 1989 income tax refund was offset against their 1985 tax liability at a time when the assessment was under protest. Counsel for IDOR stated that the offset was made in error. It may be the policy of IDOR not to continue with collection procedures while a case is under protest. However, it may be that IDOR chooses not to pursue collection procedures because it considers itself protected by the tax lien. IDOR acknowledges it may file a notice of tax lien while an assessment is under protest.

The Wernimonts' 1985 tax liability was assessed on the date of the notice of assessment, August 22, 1991, more than 240 days before the date of their Chapter 7 petition. To the extent, if any, that the 1991 assessment duplicated the assessment made July 11, 1986, those taxes were already assessed on the earlier date. Therefore, the court concludes that the Wernimonts' 1985 tax liability is dischargeable.

### *Lien Avoidance*

The Wernimonts claim that IDOR's tax liens are avoidable pursuant to 11 U.S.C. § 545 because the liens would not be enforceable against a good faith purchaser. IDOR objects to summary judgment on the issue of lien avoidance on the ground that the Wernimonts' complaint sought avoidance of the liens under 11 U.S.C. §§ 547 and 522(g). Because the court concludes that the Wernimonts may not avoid the tax liens, IDOR will not be prejudiced by a decision on summary judgment motion. The court will address the applicability of § 545.

IDOR's tax liens are statutory liens because they arose under the circumstances provided in Iowa Code § 422.26. 11 U.S.C. § 101(53). Section 545 authorizes the

trustee to avoid the fixing of a statutory lien on property of the debtor to the extent that the lien:

> is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property, whether or not such a purchaser exists.

11 U.S.C. § 545(2). The debtor may exercise the trustee's power to avoid a statutory lien as to exempt property if the trustee could have avoided the lien but did not attempt to do so. 11 U.S.C. § 522(h).

■ The Wernimonts argue that IDOR's liens would not have been enforceable against a bona fide purchaser at the time of their bankruptcy filing because the Wernimonts owned only personal property. The Wernimonts have cited *In re Sierer*, 121 B.R. 884 (Bankr.N.D.Fla.1990), *aff'd in part, rev'd in part*, 139 B.R. 752, 755 (N.D.Fla.1991) as authority that they may avoid the IDOR lien pursuant to § 545. *Sierer* is distinguishable. It involved a federal tax lien. The Internal Revenue Code provides that a properly filed federal tax lien will be invalid against bona fide purchasers of particular property upon stated conditions. 26 U.S.C. § 6323(b); *Sierer*, 139 B.R. at 755–56; 4 Collier on Bankruptcy ¶ 545.04[3] (15th ed. 1994).

Iowa has not enacted a statute similar to § 6323(b). The Wernimonts argue that the federal law may be applied analogously to an Iowa tax lien. The Wernimonts apparently assume that filing a notice of lien with the county recorder has no effect regarding transfers of personal property. However, Iowa Code § 422.26 states that a tax lien shall be a lien on all of the taxpayer's property, "whether real or personal." That section further provides:

> In order to preserve the aforesaid lien against subsequent mortgagees, *purchasers* or judgment creditors, for value and without notice of the lien, on *any property* situated in a county, the director shall file with the recorder of the county, in which said property is located, a notice of said lien.

Iowa Code § 422.26 (emphasis added). Section 422.26 indicates there could be no good faith purchaser of a taxpayer's personal property once IDOR has filed a notice of lien with the county recorder. Because IDOR's lien notices were properly filed pre-petition, the bankruptcy trustee could not have avoided the liens. Therefore, neither do the Wernimonts have the power to avoid the liens.

■ Even assuming for argument there could be a good faith purchaser of personal property after an Iowa tax lien is filed, § 522(c) effectively prevents a debtor from avoiding a tax lien. That section provides:

> Unless the case is dismissed, property exempted under [§ 522] is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except ...
>
> (2) a debt secured by a lien that is ...
>
> (B) a tax lien, notice of which is properly filed.

11 U.S.C. § 522(c)(2)(B). In *Perry v. United States (In re Perry)*, 90 B.R. 565 (Bankr. S.D.Fla.1988), the debtor sought to avoid perfected federal tax liens as to his personal property, relying on § 545(2). The court believed that the debtor's lien avoidance power had to be reconciled with § 522(c), which showed that "Congress did not intend that *any* bankruptcy debtor could exempt *any* property from a perfected tax lien." *Perry*, 90 B.R. at 566 (emphasis in original). The court noted that this conclusion was consistent with 26 U.S.C. § 6323(b). *Id.* at n. 2. See also *In re Ridgley*, 81 B.R. 65, 68 (Bankr.D.Or.1987) (§ 522(c)(2)(B) prevents Chapter 13 debtors from using power otherwise available under § 522(h) to avoid tax lien on personal property); *In re Robinson*, 166 B.R. 812, 815–16 (Bankr.D.Vt.1994) (same result in Chapter 7).

For the foregoing reasons, the court concludes that, although the Wernimonts' 1985 Iowa income tax liability is dischargeable, the Wernimonts may not avoid IDOR's liens on their personal property.

## ORDER

IT IS ORDERED that Wernimonts' motion for summary judgment is granted in part and denied in part.

IT IS FURTHER ORDERED that the 1985 Iowa income tax liability of David G. Wernimont and Joleen M. Wernimont is discharged.

IT IS FURTHER ORDERED that the tax liens of the Iowa Department of Revenue and Finance are not avoidable. Judgment shall enter accordingly.

SO ORDERED.