In re Willis E. HARTMAN, Debtor.

**Willis E. HARTMAN, Plaintiff,**

v.

**UNITED STATES of America, Internal Revenue Service, the State of Kansas, and Kansas Department of Revenue, Defendants.**

Bankruptcy No. 87–11805.
Adv. No. 88–0164.
No. 89–1264–C.

United States District Court,
D. Kansas.

Feb. 14, 1990.

Paul B. Swartz and Martin R. Brown, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for plaintiff.

Kim I. Martin, Asst. U.S. Atty., Wichita, Kan., Virginia Cronan Lowe, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before this court on appeal of the bankruptcy court's memorandum of decision and judgment of decision which were filed on May 3, 1989, in an adversary proceeding. The bankruptcy court therein held that the tax assessed on the plaintiff's 1983 income, the related penalties, and the associated interest are dischargeable under the provisions of 11 U.S.C. §§ 507(a)(7)(A)(ii) and 523(a)(1). The United States of America appeals the decision contending the 1983 income tax liability was assessed within 240 days of the filing of the bankruptcy petition making it and the related penalties and interest nondischargeable under these same Bankruptcy Code provisions.

Before the bankruptcy court, the parties stipulated to the following pertinent facts:

1. For the calendar year 1983, the debtor filed his 1983 United States income tax return on or about March 10, 1984.

2. The debtor's United States income tax return for the calendar year 1983 was audited by the Internal Revenue Service (IRS).

3. By letter dated September 9, 1986, (IRS Form Letter 950), the debtor was informed that he was being sent a copy of the IRS examination report which explained why the IRS believed that an adjustment of his tax liability for the 1983 and 1984 tax years would be necessary. As an attachment to such letter, debtor was sent Form 870, entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," dated September 9, 1986, which notified the debtor of the IRS's claim under-report his income for the calendar year 1983. This form 870 notified the debtor that the IRS had increased his taxes by

$32,865.60 for the calendar year 1983, and attributed $4,929.84 in penalties on this increased tax.

4. IRS Form 3552 was issued to Willis E. and Susan M. Hartman on November 26, 1986, and reported that for the calendar year 1983, Willis E. and Susan M. Hartman were indebted to the United States Government for $32,865.60 in increased tax, $4,929.84 in additional penalties, and $11,-768.52 in interest.

5. The debtor filed his petition for bankruptcy pursuant to 11 U.S.C. § 101, *et seq.*, on June 25, 1987.

6. The debtor's ex-wife, Susan M. Hartman, is not a party to these proceedings and is not a debtor in this court.

■ The parties agree that the controlling issue which was presented to the bankruptcy court on the cross motions for summary judgment and is now advanced to this court on appeal is one of law. Despite this agreement, the parties offer conflicting standards of review. The appellant proposes a *de novo* standard, citing *In re Branding Iron Motel*, 798 F.2d 396, 399–400 (10th Cir.1986). Appellee suggests a less rigorous standard of clearly erroneous or abuse of discretion, citing *In re Goin*, 808 F.2d 1391, 1393 (10th Cir.1987). The latter standard has been reserved for review of findings of fact, as shown in the *Goin* decision where the bankruptcy court found the obligation arising from a divorce settlement was in the nature of alimony and maintenance. 808 F.2d at 1392–93. The instant appeal requires no review of findings of fact, as it simply turns upon defining the term "assess" for purposes of 11 U.S.C. § 507(a)(7)(A)(ii). The subsequent application of the stipulated facts to the definition reached is merely mechanical. A *de novo* standard of review will be employed.

This case entails the interaction of several provisions of the Bankruptcy Code 11 U.S.C. §§ 101, *et seq.* The general right of discharge for an individual found at subsection (a) of 11 U.S.C. § 727, is limited in subsection (b) to those debts "that arose before the date of the order for relief" and to those exceptions provided in 11 U.S.C. § 523. One of the exceptions to discharge

stated in § 523 is for a tax of a "kind and for the periods specified in" § 507(a)(7), regardless of whether a corresponding claim was filed or not. In its entirety, 11 U.S.C. § 507(a)(7)(A) provides:

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

The appellant contends the tax liability, interest and penalties are not dischargeable because of the application of § 507(a)(7)(A)(ii).

Before the bankruptcy court, the IRS sought summary judgment on the argument that it did not assess, as defined in the Internal Revenue Code, the 1983 income tax liability against the debtor until November 26, 1986, which is within the 240–day period prior to the debtor's filing of his bankruptcy petition. In support of his motion, the debtor argued the taxes were "assessed," as used in the Bankruptcy Code, on September 9, 1986, the date of the notice of deficiency, which is outside the statutory 240–day period. The bankruptcy court held that "the technical steps necessary to constitute assessment under the Internal Revenue Code" are not requirements to triggering the application of § 507(a)(7)(A)(ii), and that "[a] tax is assessed when the IRS has determined the

deficiency and begun the process which culminates in the technical assessment under the Internal Revenue Code." (App. Rec. 18, p. 10).

On appeal, the United States argues that the bankruptcy court erred in not determining the federal income taxes were assessed as of the completion of certain procedures under the Internal Revenue Code and the Treasury Regulations. These relevant tax law provisions include:

The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, ..., which have not been duly paid.... (26 U.S.C. § 6201(a))

The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment. (26 U.S.C. § 6203)

The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount shown on the supporting list or record. The date of the assessment is the date the summary record is signed by an assessment officer. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed. (26 C.F.R. § 301.6203–1)

As appellant notes, courts have unquestionably followed these provisions in determining what constitutes an assessment in a tax case. *See Planned Investments, Inc. v. U.S.*, 881 F.2d 340, 343 (6th Cir.1989); *Matter of Carlson*, 580 F.2d 1365, 1368 (10th Cir.1978).

In approaching the issue, appellee points out the general rules that exceptions to discharge are narrowly construed and that the burden of proving an exception falls upon the party asserting it. *In re Black*, 787 F.2d 503, 505 (10th Cir.1986). Appellee also calls upon one of the recognized rules of statutory construction that a term should be given its plain and ordinary meaning in the absence of any other specific definition, citing *Young v. Sedgwick County, Kan.*, 660 F.Supp. 918, 924 (D.Kan.1987). Appellee attaches much significance to Congress' apparent decision against specifically defining "assess," even though it mentioned the Internal Revenue Code in its deliberations over §§ 507 and 523.

The starting point in construing a statute is the particular language itself; if unambiguous and rational, the language governs. *Glenpool Utility Services v. Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989); *see Mallard v. U.S. District Court of Iowa*, 490 U.S. ——, ——, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318, 326 (1989). A definition of "assess" is not found in the Bankruptcy Code. In his brief, the appellee repeatedly remarks that "assess" should be given its "common, ordinary meaning," yet he offers no such definition. The debtor offered to the bankruptcy court several definitions for "assess" from Black's Law Dictionary 106 (5th ed.1979), in particular, "ascertain," "fix the value," or "tax." Black's also defines "assessed" as synonymous with "imposed." *Id.* The definition of "assessment" is broken down into several categories, including a section on taxation in which the following sentence appears: "The process whereby the Internal Revenue Service imposes an additional tax liability." Black's Law Dictionary 107 (5th ed.

1979). These varied definitions indicate the meaning of "assess" is necessarily contextual. Under the circumstances of § 507(a)(7)(A)(ii), "assessed" refers to taxes that have been imposed. To impose taxes does not mean simply the calculation or determination of a tax deficiency; it connotes some additional act of attaching liability.

"Assess" prominently appears at § 507(a)(7)(A)(ii) and (iii), and § 362(a)(6). If the same word is used in different sections of a body of law, the word is generally given the same meaning in each section. *Barnson v. U.S.*, 816 F.2d 549, 554 (10th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). As revealed in § 507(a)(7)(A)(iii), the determination of whether a tax is "assessable" is clearly contemplated to involve the applicable tax law. *See In re Torrente*, 75 B.R. 193, 195 (Bankr.S.D.Fla.1987). It is an untenable construction to apply tax law only to the question of whether a tax is assessable and not to the companion issue of when a tax is assessed. Congress' decision not to refer to the Internal Revenue Code in § 507(a)(7)(A)(ii) or in a relevant definitional section is plausibly explained by the need for that provision to be adaptable to a variety of federal, state and local taxes on or measured by income or gross receipts.

Another recognized principle of statutory construction is that words grouped in a list should have a related meaning. *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 8, 105 S.Ct. 2458, 2462, 86 L.Ed.2d 1 (1985). The use of "collect" and "recover" alongside "assess" in § 362(a)(6) ("any act to collect, assess, or recover a claim against the debtor") evidences that "assess" implies something more than the fixing or determining of an amount due. Relying in part on this same analysis, one court has held:

> "Assess" as used by § 362(a)(6) concerns the imposition or levying of liability upon, or the collection of liability from, the debtor. This conclusion is supported by the fact that the term in question is used in conjunction with the terms "collect" and "recover." The statute's

use of "assess" is similar to the meaning of "levy." Thus, the section prohibits the levying of liabilities or extraction of assets. Section 362(a)(6) cannot, consistent within other sections of the Bankruptcy Code, interfere within the calculation of debts owed, the preparation of offers of proof, or the issuance of a notice of tax liability. 11 U.S.C. §§ 501, 505, 362(b)(9).

A notice of assessment made pursuant to 75 Pa.C.S. § 9508(a), (b) does not constitute an assessment within the scope of 11 U.S.C. § 362(a)(6). Simply stated, the "notice of assessment/determination" does not in and of itself result in the liability being collected from or levied upon the debtor or the enforcement of a lien upon the debtor's property.

*In re Fasgo*, No. 86–1995 (E.D.Pa. Sept. 30, 1986) (1986 WL 10817). The appellee's argument that "assess" as used in § 362(a)(6) stands in clear contrast to "assessed" as used in § 507(a)(7)(A)(ii) is a point without substance. The former provision is intended to provide the debtor some temporary relief, in the form of a stay, from the harassment of collection efforts, while the latter provision, in combination with § 523, creates an exception to discharge. Unique statutory aims are insufficient alone to give different meanings to the same word unless it appears Congress intended such an incongruity. This court does not perceive the purposes of the respective Code sections as being so divergent to justify ignoring Congress' conscious choice of the same word or eschewing a common meaning reasonably compatible with both provisions.

"An 'assessment' of taxes is a formal, discrete act with specific legal consequences." *In re Heritage Vil. Ch. & Missionary Fellowship*, 87 B.R. 401, 403 (D.S.C.), *aff'd*, 851 F.2d 104 (4th Cir.1988). If investigation reveals an amount stated on the return to be deficient, the taxpayer is notified and administrative proceedings are commenced. An assessment is made by the IRS only after the taxpayer is sent a notice of deficiency. *Id.* Within sixty days of the assessment being entered, the IRS sends a notice of assessment and therein

demands payment. 26 U.S.C. § 6303. A tax lien on the taxpayer's property arises from the assessment which permits the IRS to levy upon the property of the taxpayer within ten days of the notice and demand. 26 U.S.C. §§ 6322, 6331(a). *See also Matter of Carlson*, 580 F.2d at 1368. Simply stated, "a tax assessment, pursuant to 26 U.S.C. § 6201 *et seq.*, is an administrative device, used by the IRS in its collection activities, which serves the function of a court judgment." *In re Carter*, 74 B.R. 613, 615 (Bankr.E.D.Pa.1987). Congress is presumed to have known this law and to have acted in a manner to harmonize the provisions of the Bankruptcy Code with the existing Internal Revenue Code. *See generally Cannon v. University of Chicago*, 441 U.S. 677, 697–98, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979).

As worded, § 507(a)(7)(A)(ii) does not preclude applying the definition of "assessment" found in the Internal Revenue Code when a federal tax deficiency is involved. This ostensibly "technical" definition provides a readily determinable date of assessment. Courts have assumed, with little dispute, that the assessment date under the Internal Revenue Code is the same assessment date under the Bankruptcy Code provision, § 507(a)(7)(A)(ii). *See In re Richcreek*, No. 87–916–C (D.Ind.1988) (1988 WL 81527); *Matter of Youngcourt*, 86 B.R. 715, 717 (Bankr.M.D.Fla.1988); *In re Carter*, 74 B.R. 613, 617 (Bankr.E.D.Pa.1987); *Matter of Kostoglou*, 74 B.R. 202, 203 (Bankr.N.D.Ohio 1987). Even though the term may appear in the Bankruptcy Code, it is specifically used in reference to taxes and its meaning must be a function of that context. Recognizing the difficulty of defining "assessment" so as to encompass all possible tax procedures of federal, state, and local governmental units, Congress employed a common term of tax lexicon and left its peculiar meaning to depend upon the particular tax procedures. In this case, the federal taxes were assessed on November 26, 1986, and, therefore, within the 240–day period prior to the debtor's filing of his bankruptcy petition.

Notwithstanding the nondischargeability of the tax deficiency, appellee contends the interest and penalties are dischargeable under § 523(a)(7)(B) as being imposed more than three years before the date of the filing of the bankruptcy petition, citing *In re Roberts*, 94 B.R. 707, 709 (Bankr.N.D.Okla.1989). The *Roberts* decision is by far the minority approach on this issue, as most courts have held that the tax penalties are nondischargeable if the tax itself is nondischargeable. *Cassidy v. C.I.R.*, 814 F.2d 477, 480–81 (7th Cir.1987); *In re Carlton*, 19 B.R. 73, 74–75 (D.N.M. 1982); *In re Ferrara*, 103 B.R. 870, 872–73 (Bankr.N.D.Ohio 1989); *In re Harris*, 59 B.R. 545, 549 (Bankr.W.D.Va.1986). The plain meaning approach employed by the bankruptcy court in *Roberts* overlooks the ambiguity in the language of § 523(a)(7) and the need to resort to legislative history. *Ferrara*, 103 B.R. at 872–73. The legislative history reveals the distinct purposes behind the separate provisions (A) and (B) to § 523(a)(7). *In re Carlton*, 19 B.R. at 74–75. This court is convinced the majority approach taken in interpreting § 523(a)(7) correctly reflects congressional intent.

IT IS THEREFORE ORDERED that the bankruptcy court's memorandum of decision and judgment of decision, which were filed on May 3, 1989, are reversed, and that the case is remanded for an order granting the defendants' motion for summary judgment and finding the assessed income tax for 1983, related penalties and associated interest are nondischargeable under the provisions of 11 U.S.C. §§ 507(a)(7)(A)(ii) and 523(a)(1).