In re Robert C. HARDIE, Debtor.

Robert C. HARDIE, Appellant,

v.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellee.

Bankruptcy No. 92–50123–H2–7.
Adversary No. 95–4202.
Civil Action No. H–96–2282.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 24, 1996.

Michael Louis Minns, Houston, TX, for Robert C. Hardie.

Nancy Graml, U.S. Attorney's Office, Houston, TX, for U.S., I.R.S.

Pamela G. Johnson, Trustee, Baker and Hostetler, Houston, TX.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

In this appeal from the United States Bankruptcy Court for the Southern District of Texas, Adversary No. 95–4202, Appellant Robert C. Hardie contends that the Bankruptcy Court erred in determining that his income tax deficiency liabilities for the years 1980 through 1987 are nondischargeable. The Court has considered the parties' briefs, the Bankruptcy record, all other matters of record in this case, and the relevant authorities. For the reasons stated below, the judgment of the Bankruptcy Court is **AFFIRMED**.

### I. FACTUAL BACKGROUND

Appellant Robert C. Hardie ("Appellant" or "Hardie") filed his income tax returns for

---

**44.** Nor will the Court condone the *post*-bankrupt- cy planning done in this case.

the years 1980–82 in 1985, for the years 1983–84 in 1987, and for the years 1985–87 in 1989.[1] *See* Joint Pretrial Statement [Bankr.Record Doc. # 21], at 3–4.[2] The Internal Revenue Service ("IRS") audited Hardie's returns for the years 1980 through 1987. *See id.*, at 4. Hardie did not agree to the audit findings, and the IRS issued statutory notices of deficiency for all of these years. *See id.*

After receiving the notices of deficiency, Hardie filed two petitions in the United States Tax Court disputing the IRS's findings. *See id.*, at 4–5.[3] On February 5 and 6, 1992, the Tax Court entered two decisions which determined the amounts of the deficiencies Hardie owed for the years 1980 through 1987. *See id.*, Exhibits C–1 and C–2.[4] On May 4 and 11, 1992, the IRS issued Certificates of Assessment against Hardie for the deficiencies determined by the Tax Court for the years 1980–84 and 1985–87, respectively. *See id.*, Exhibit F.

On November 30, 1992, Hardie filed a voluntary Petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. *See id.*, Exhibit A.[5] In 1995, he filed this action for determination of the dischargeability of his federal income taxes determined by the Tax Court for the years 1980 through 1987. *See* Complaint [Bankr.Record Doc. # 1]. On June 17, 1996, the Bankruptcy Court granted summary judgment in favor of the IRS, holding that the deficiencies were not dischargeable debts. *See* Judgment [Bankr.Record Doc. # 30]. Hardie now appeals from the Bankruptcy Court's judgment.[6]

## II. STANDARD OF REVIEW

When reviewing a bankruptcy court's decision, a district court functions as an appellate court and applies the standard of review generally applied in federal court appeals. *See Matter of Webb*, 954 F.2d 1102, 1103–04 (5th Cir.1992). Accordingly, the Bankruptcy Court's factual determinations are subject to the "clearly erroneous" standard of review, and the Bankruptcy Court's conclusions of law are reviewed *de novo*. *See Matter of Kennard*, 970 F.2d 1455, 1457, 1458 (5th Cir.1992). Since the parties in the current action have no dispute over factual issues, and the Bankruptcy Court's decision was based entirely on conclusions of law, this Court reviews the Bankruptcy Court's judgment *de novo*.

## III. DISCUSSION

In this action, the IRS contends, and the Bankruptcy Court agreed, that Hardie's income tax deficiencies determined by the Tax Court are not dischargeable under the Bankruptcy Code. Section 727 of the Code provides a general rule granting Chapter 7 debtors a discharge of their debts. *See* 11 U.S.C. § 727. However, Section 523 provides exceptions to the rule. *See* 11 U.S.C. § 523. Under Section 523(a)(1)(A), a debtor is not discharged from debts for a tax "of the kind and for the periods specified in section ... 507(a)(8)" of the Code. Section 507(a)(8) includes income taxes "assessed within 240 days ... before the date of the filing of the [bankruptcy] petition." 11 U.S.C.

1. For the years 1980–84, Hardie reported a tax liability of zero. For the years 1985–87, he reported tax liabilities of, respectively, $6,029.00, $8,523.00, and $6,095.00.

2. Since the parties do not dispute any points of fact in this case, statements of fact in this Order refer to the parties' Joint Pretrial Statement in the Bankruptcy Record.

3. On May 2, 1990, Hardie filed a petition, Docket No. 8409–90, disputing the IRS's determination of deficiencies for the years 1980–84. On June 10, 1991, he filed a petition, Docket No. 11643–91, disputing his alleged deficiencies for the years 1985–87.

4. The February 5 decision determined his liabilities for 1980–84, and the February 6 decision determined his liabilities for 1985–87.

5. He received his discharge on March 26, 1993. *See id.*, Exhibit E.

6. Hardie contends that the IRS conceded that his tax deficiencies for the years 1985–87 are dischargeable. However, the IRS indicated in its oral argument before the Bankruptcy Court that it conceded only that the amounts Hardie claimed on his income tax returns for those years are dischargeable, not the amounts of the additional liabilities for those years which the IRS found after its audit and which were the subject of the Tax Court decisions. *See* Transcript [Bankr.Record Doc. # 27], at 11.

§ 507(a)(8)(A)(ii). Thus, in conjunction with one another, Sections 523(a)(1)(A) and 507(a)(8)(A)(ii) provide that an income tax that is assessed against a debtor within 240 days before the filing of a bankruptcy petition is excepted from discharge in bankruptcy.

The sole dispute in this action is whether Hardie's tax deficiencies were "assessed" within the 240 day period before he filed his bankruptcy petition on November 30, 1992. If they were, then the parties agree that his liability for the taxes should be discharged, but if they were not, then the parties agree that Hardie is still liable for them. Hardie contends that the taxes were assessed outside the 240 day period, on February 5 and 6, 1992, when the Tax Court entered its decisions determining the amounts of his tax deficiencies. The IRS, on the other hand, contends that the taxes were not assessed until later, within the 240 day period, on May 4 and 11, 1992, when the IRS issued its Certificates of Assessment.

The Bankruptcy Code does not specify what action constitutes an "assessment." However, the Internal Revenue Code does. In 26 U.S.C. § 6203, the Internal Revenue Code provides that an "assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with the rules and regulations prescribed by the Secretary." The Treasury Regulations provide that: "The assessment shall be made by an assessment officer signing the summary record of assessment.... *The date of the assessment is the date the summary record is signed by an assessment officer.*" 26 C.F.R. § 301.6203–1 (emphasis added). In *Laing v. United States,* 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976), the Supreme Court acknowledged that, under the Internal Revenue Code, an assessment occurs when the IRS performs this procedure. Other courts have subse-

quently recognized that 26 U.S.C. § 6203 provides a technical definition for the term "assessment." *See, e.g., In re Heritage Village Church and Missionary Fellowship,* 87 B.R. 401, 403 (D.S.C.), *aff'd,* 851 F.2d 104 (4th Cir.1988) ("An 'assessment' of taxes is a formal, discrete act with specific legal consequences").[7]

Confronted with the same issue raised in this case, a number of courts have concluded that the term "assess" should be read to have the same meaning in the Bankruptcy Code as it has in the Internal Revenue Code. *See, e.g., In re King,* 961 F.2d 1423, 1427 (9th Cir.1992) ("[t]he determination of the precise date of assessment should be accomplished by reference to the specific tax code and practices involved"); *In re Hartman,* 110 B.R. 951, 955 (D.Kan.1990) ("[i]f the same word is used in different sections of a body of law, the word is generally given the same meaning in each section");[8] *In re Oldfield,* 121 B.R. 249 (Bank.E.D.Ark.1990); *Matter of Kostoglou,* 74 B.R. 202 (Bankr.N.D.Ohio 1987). *See also Cannon v. University of Chicago,* 441 U.S. 677, 698–99, 99 S.Ct. 1946, 1958–59, 60 L.Ed.2d 560 (1979) (when a statute lacks specificity on some matter, Congress is presumed to intend for the statute to be interpreted in conformity with other related statutes and the courts' interpretations of them).

Hardie maintains, however, that the term "assessment," as used in the Bankruptcy Code, may refer not only to the date on which the IRS performs its internal bookkeeping procedure but also may refer, in cases in which the Tax Court makes a determination regarding a taxpayer's deficiencies, to the date on which the Tax Court enters its judgment. Hardie contends that his tax deficiencies became legally determined and collectible immediately upon entry of the Tax Court's judgments and were therefore "assessed" on the dates of Tax Court's decisions.

---

**7.** The IRS's Certificates of Assessment provide sufficient proof that the IRS performed the assessments in accordance with the Internal Revenue Code. *See In re Hays,* 166 B.R. 946 (Bankr. D.N.M.1994) ("a Certificate of Assessment is 'routinely used' to prove that an assessment was made and is considered 'presumptive proof of a valid assessment') (quoting *Guthrie v. Sawyer,* 970 F.2d 733, 737 (10th Cir.1992)).

**8.** The *Hartman* court persuasively surmises why Congress failed to define "assessment" in the Bankruptcy Code: "Recognizing the difficulty of defining 'assessment' so as to encompass all possible tax procedures of federal, state, and local governmental units, Congress employed a common term of tax lexicon and left its peculiar meaning to depend upon the particular tax procedures." *In re Hartman,* 110 B.R. at 956.

■ Hardie has failed to persuade the Court, however, that the term "assessment" should have a different meaning under the Bankruptcy Code from its meaning under the Internal Revenue Code. Under the technical definition in the Internal Revenue Code, it is the IRS that makes "assessments" against taxpayers. The Tax Court, a separate entity from the IRS, does not make actual "assessments," as defined by the Internal Revenue Code. Instead, the Tax Court's role, in this context, is to resolve disputes between a taxpayer and the IRS, when a taxpayer challenges a notice of deficiency issued by the IRS. If the Tax Court concludes, as it did here, that the taxpayer has underpaid taxes, then the Tax Court's judgment authorizes the IRS to make an "assessment" against the taxpayer.

Hardie contends that this interpretation of the assessment procedure would mean that the IRS has authority superior to that of the Tax Court, in that the IRS could disregard the decision of the Tax Court by indefinitely delaying an assessment or never making an assessment at all. However, this contention mischaracterizes the roles of the IRS and the Tax Court. In the Tax Court action, the IRS was a party urging the court to grant it permission to make an assessment against Hardie. When the Tax Court entered its judgments, it gave the IRS the requested permission. The IRS then had the option of making or not making the assessments. Like any successful party to a court action, the IRS could choose to pursue or not pursue the remedy authorized by the court. The IRS could not, however, indefinitely delay making the assessments, as Hardie contends, because if it waited too long, it would be barred by the applicable statute of limitations.

Thus, the assessments of Hardie's tax deficiencies did not occur instantaneously upon the Tax Court's entries of judgment. In order for the assessments to be made and in order for the tax deficiencies to be collectible, the IRS first had to perform its own administrative procedures as provided by 26 U.S.C.

§ 6203. *See Bolves v. Internal Revenue Service,* 76 AFTR.2d 95–5638 (Bankr.D.Fl.1995) (following judgment by the Tax Court, assessment is not automatic and self effectuating, but instead requires further action by the IRS). Although Hardie agrees that the date of assessment is "the earliest time when the IRS may begin collection procedures," *see* Appellant's Brief [Doc. # 7], at 7 (quoting *In re Pennetta,* 19 B.R. 794, 796 (Bankr. D.Col.1982)), he provides no statutory or caselaw authority to support his contention that his tax deficiencies were collectible immediately after entry of the Tax Court judgments.

Instead, Hardie argues that his tax deficiencies became immediately collectible because, unlike in the cases cited by the IRS, *In re Hartman, Matter of Kostoglou,* and *In re Oldfield,* Hardie's Tax Court judgments contained the following language:

> It is further stipulated that, effective upon entry of the decisions by the Court, petitioner waives the restriction contained in I.R.C. § 6213(a) prohibiting assessment and collection of the deficiencies and additions to taxes (plus statutory interest) until the decision of the Tax Court has become final.

Joint Pretrial Statement, Exhibits C–1 and C–2. The Court rejects Hardie's contention that this clause rendered his tax deficiencies immediately collectible. In light of the discussion above, it is clear that this clause merely authorized the IRS to proceed with its assessment procedure earlier than otherwise would have been allowed. Had this clause not been included, the IRS would not have been able to perform its assessment until the requisite number of days had passed following the Tax Court's entry of judgment. However, it appears that because the parties had agreed to the Tax Court judgments, and therefore waived their rights of appeal, the waiver clause indicated the parties' agreement that the IRS need not wait the usual period of time before which a Tax Court judgment becomes final and during which, ordinarily, parties can decide whether to pursue an appeal.[9]

9. During oral argument, Hardie broached the additional argument that the IRS's liens or attempts to place liens on his property prior to entry of the Tax Court judgments indicate that

his deficiencies were collectible earlier than the dates on which the IRS claims to have made its assessments. Hardie provided no authority at

Other courts have uniformly rejected taxpayers' assertions that the assessment date for federal tax deficiencies is determined by anything other than the procedure specified in the Internal Revenue Code, 26 U.S.C. § 6203. *See In re Hartman,* 110 B.R. 951 (taxpayer asserted assessment date was date the notice of deficiency was mailed); *In re Oldfield,* 121 B.R. 249 (taxpayer asserted assessment date was date the returns were filed or, alternatively, audited); *In re Hays,* 166 B.R. 946 (taxpayer asserted assessment date was date the return was filed). This Court likewise rejects Hardie's attempt to alter the statutory date of assessment. Thus, the IRS assessed Hardie's tax deficiencies less than 240 days before he filed his bankruptcy petition, and under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(ii) those deficiencies are not dischargeable debts.

## IV. *CONCLUSION*

For the foregoing reasons, it is **ORDERED** that the judgment of the Bankruptcy Court is **AFFIRMED.** It is further

**ORDERED** that Hardie's request for attorney's fees is **DENIED.**

oral argument for this argument, and it was not briefed. It therefore is not properly before this Court, and the Court declines to address it.