# UNITED STATES BANKRUPTCY APPELLATE PANEL

## FOR THE EIGHTH CIRCUIT

———————

No. 99-6054 MN

———————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Robert C. O'Connell, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Robert C. O'Connell, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Appellant, | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Minnesota Department of Revenue, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: January 26, 2000
Filed:    March 21, 2000

———————

Before WILLIAM A. HILL, SCHERMER and JACKWIG[1], Bankruptcy Judges

SCHERMER, Bankruptcy Judge

The debtor, Robert C. O'Connell ("Debtor"), appeals the bankruptcy court order denying his objection to the claim of the Minnesota Department of Revenue. We have

———————

[1]The Honorable Lee M. Jackwig, United States Bankruptcy Judge for the Southern District Iowa, sitting by designation.

jurisdiction over this appeal from the final order of the bankruptcy court.  <u>See</u> 28 U.S.C. § 158(b).  For the reasons set forth below, we reverse.

## ISSUE

The issue on appeal is whether the claim of the Minnesota Department of Revenue for income tax liability based on the Debtor's delinquent tax returns filed six days before the Debtor filed his bankruptcy petition is entitled to priority pursuant to 11 U.S.C. § 507(a)(8)(A)(ii).  We conclude that such taxes are not entitled to priority status.

## BACKGROUND

On May 20, 1993, the Debtor filed his Minnesota income tax returns for the years 1986 though 1992.  Six days later the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.  The Minnesota Department of Revenue timely filed a priority claim based on the Debtor's income tax liability for years 1986 through 1992.

On or about February 3, 1999, the Debtor filed an objection to the priority classification of his income taxes for years 1986 through 1988.[2]  By order entered May 27, 1999, the bankruptcy court overruled the Debtor's objection to the claim.  The court determined that under Minnesota law state taxes are assessed on the date a return is filed.  Consequently, the court concluded that the taxes were assessed six days before the bankruptcy petition was filed, well within 240 days before the bankruptcy petition, and therefore the Minnesota Department of Revenue's claim was entitled to priority pursuant to 11 U.S.C. § 507(a)(8)(A)(ii).

---

[2]The Debtor did not owe the Minnesota Department of Revenue any income taxes for 1989; therefore the priority status of tax obligations for that year is not at issue.

STANDARD OF REVIEW

The facts are not in dispute.  We review the bankruptcy court's conclusions of law de novo.  Fed. R. Bankr. P. 8013; Minnesota Department of Revenue v. United States, 184 F.3d 725, 727-28 (8th Cir. 1999); Waugh v. Internal Revenue Service (In re Waugh), 109 F.3d 489, 491 (8th Cir. 1997).

DISCUSSION

Pursuant to Section 507(a)(8)(A)(ii) of the Bankruptcy Code, claims for income taxes assessed within 240 days before the petition date are entitled to priority.  In order to determine whether the Debtor's Minnesota income taxes were assessed within 240 days before the petition date, we must first determine what the term "assessed" means when used in Section 507(a)(8)(A)(ii) of the Bankruptcy Code.  We must then apply the controlling definition to the Minnesota statutory scheme to determine when Minnesota income taxes are assessed for purposes of Section 507(a)(8)(A)(ii) of the Bankruptcy Code.

I. Definition of the Term "Assessed" as Used in
Section 507(a)(8)(A)(ii) of the Bankruptcy Code

Determining when taxes are assessed for purposes of Section 507(a)(8)(A)(ii) of the Bankruptcy Code is a question of federal law.  Louisiana Department of Revenue and Taxation v. Lewis (In re Lewis), 199 F.3d 249, 251 (5th Cir. 2000), citing In re Garfinckels, Inc., 203 B.R. 814, 817 (Bankr. D.D.C.1996), King v. Franchise Tax Board (In re King), 961 F.2d 1423, 1427 (9th Cir. 1992), and 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 507.10[2][b], p. 507-63 n.19 (15th rev. ed.).

The Bankruptcy Code does not define the term "assessment."  Congress recognized the difficulty of defining "assessment" in the bankruptcy context so as to "encompass all possible tax procedures of federal, state, and local governmental units" and instead "employed a common term of tax lexicon and left its peculiar meaning to depend upon the particular tax procedures."  Hartman v. United States (In re Hartman),

3

110 B.R. 951, 956 (D. Kan.1990), quoted in <u>Louisiana Department of Revenue and Taxation v. Lewis (In re Lewis)</u>, 199 F.3d 249, 252 (5th Cir. 2000) and <u>Hardie v. United States (In re Hardie)</u>, 204 B.R. 944, 946 n.8 (S.D. Tex. 1996).  By not defining the term, Congress has enabled the courts to fashion a uniform substantive rule regarding when taxes are assessed for purposes of Section 507(a)(8)(A)(ii) of the Bankruptcy Code. <u>Louisiana Department of Revenue and Taxation v. Lewis (In re Lewis)</u>, 199 F.3d 249, 252 (5th Cir. 2000).

The majority of courts have adopted the Internal Revenue Code definition of assessment for purposes of determining when federal taxes are assessed under Section 507(a)(8)(A)(ii) of the Bankruptcy Code.  <u>Louisiana Department of Revenue and Taxation v. Lewis (In re Lewis)</u>, 199 F.3d 249, 252 (5th Cir. 2000).  Federal taxes are assessed at the precise time an assessment officer of the Internal Revenue Service signs a summary record of assessment.  26 U.S.C. § 6202; 26 C.F.R. § 301.6203-1.  The practical significance of this act is that it finally determines the amount of the tax due.  Where the Internal Revenue Service agrees with the taxpayer's self-reported taxes, no additional notice is required prior to assessment.  Where the Internal Revenue Service disagrees with the taxpayer's self-reported tax liability, assessment can only occur after the taxpayer has been given notice of the tax deficiency and an opportunity to challenge the Internal Revenue Service's determination.  26 C.F.R. § 301.6213-1.  In either case, however, assessment does not occur until the summary record has been signed by the assessment officer.  It is at that point that the tax liability has been finally determined, a lien arises in favor of the Internal Revenue Service, and the Internal Revenue Service can proceed to collect the tax.  26 U.S.C. § 6321, 6322.

Like federal taxes, state and local taxes are assessed for purposes of Section 507(a)(8)(A)(ii) of the Bankruptcy Code when the amount of the tax liability is finally determined.  In order to determine when the Debtor's income tax liability to the Minnesota Department of Revenue was assessed, we must look at Minnesota law to determine when the amount of the tax liability is finally determined.

## II. Application of Federal Definition to Minnesota Statutory Scheme

At all times relevant to this matter, the Minnesota legislature defined the date of assessment as follows:

> For purposes of taxes administered by the commissioner, the term "date of assessment" means the date a return was filed or the date a return should have been filed, whichever is later; or, in the case of taxes determined by the commissioner, "date of assessment" means the date of the order assessing taxes; or, in the case of an amended return filed by the taxpayer, the assessment date is the date the return was filed with the commissioner.

Minn. Stat. § 270.65 (1985).[3]  The state definition is not controlling for purposes of Section 507(a)(8)(A)(ii) of the Bankruptcy Code; it is merely a label affixed by the Minnesota legislature.  Instead, we must look at the substantive rights of the taxpayer vis-a-vis the Minnesota Department of Revenue to find out when the amount of the Debtor's income tax liability to the Minnesota Department of Revenue has been finally determined.[4]

---

[3]In 1999, the Minnesota legislature amended Section 270.65 to add the following provision: "or, in the case of a check from a taxpayer that is dishonored and results in an erroneous refund being given to the taxpayer, remittance of the check is deemed to be an assessment and the 'date of assessment' is the date the check was received by the commissioner."  This amendment does not affect the present dispute; therefore our analysis applies equally to the current version of the statute as well as to the version in effect when the taxes in question were assessed.

[4]The question of when a tax is assessed for purposes of determining its priority status under the Bankruptcy Code is analogous to the question of whether an obligation arising out of the dissolution of a marriage is a nondischargeable support obligation or a dischargeable property settlement obligation under the Bankruptcy Code.  In each instance, federal law controls the categorization of the obligation under the Bankruptcy Code, priority versus non-priority or dischargeable versus nondischargeable, regardless of any labels affixed under state law.  See, for example, Williams v. Williams (In re Williams), 703 F.2d 1055, 1056-57 (8th Cir. 1983).  With marital obligations, the "crucial issue is the function the award was intended to serve." Id. at 1057.  With taxes, the crucial issue is when the determination of tax liabiity is final and the taxing authority has

Pursuant to Section 289A.35 of the Minnesota Statutes, the "commissioner shall make determinations, corrections, and assessments with respect to state taxes, including interest, additional to taxes, and assessable penalties. . . . If a return has been filed, the commissioner shall examine the return and make any audit or investigation that is considered necessary." Minn. Stat. § 289A.35 (1985)(emphasis added). This affirmative duty to examine every income tax return means that tax liability cannot be finally determined until such examination has occurred.

The Minnesota Department of Revenue generally has three and one-half years after the return is filed to assess taxes. Minn. Stat. § 289A.38 (1985). Taxes cannot have been finally determined until the earlier of: (1) the completion of the mandatory examination, or (2) the expiration of the period during which the taxing authority may contest the liability.

If after examination the Minnesota Department of Revenue disagrees with the amount of tax liability reported by the taxpayer on the return, the "commissioner shall send an order of assessment to the taxpayer. . . . An order of assessment is final when made but may be reconsidered by the commissioner. . . ." Minn. Stat. § 289A.37 (1985). Furthermore, the Minnesota Department of Revenue cannot attempt to collect pursuant to the order of assessment until the later of: (1) sixty days after the order of assessment was mailed, or (2) if the taxpayer appeals the order of assessment, sixty days following the final determination of the appeal. Minn. Stat. § 289A.37 (1985).

In addition, the Minnesota Department of Revenue must send a notice and demand for payment to the taxpayer at least thirty days prior to levy. Minn. Stat. § 270.70 (1985).

The taxpayer has substantive rights vis-a-vis the Minnesota Department of Revenue after the date he or she files an income tax return even if the Minnesota Department of Revenue agrees with the amount of tax listed by the taxpayer on the return. Consequently the amount of the Debtor's state income tax liability cannot have

the right to collect the outstanding tax liability.

6

been finally determined on the date his return was filed. Therefore, assessment for purposes of Section 507(a)(8)(A)(ii) of the Bankruptcy Code did not occur on the date the returns were filed.

Furthermore, there was no evidence that a final determination as to the Debtor's income tax liability under Minnesota law was completed during the six days between the filing of the tax return and the filing of the bankruptcy petition. Consequently, the Debtor's income taxes for years 1986 through 1988 were not assessed within 240 days before the petition date and are therefore not entitled to priority under Section 507(a)(8)(A)(ii) of the Bankruptcy Code.

This result is consistent with the legislative intent behind the Bankruptcy Code. In enacting the Bankruptcy Code, Congress struck a balance between the rights of debtors, taxing authorities, and other unsecured creditors and specifically chose to afford taxing authorities a priority for certain taxes. Congress recognized that:

> [a] three-way tension exists among (1) general unsecured creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.

Waugh v. Internal Revenue Service (In re Waugh), 109 F.3d 489, 492 (8th Cir. 1997).

The Bankruptcy Code balances the right of the State of Minnesota to collect taxes from its residents against the broad discharge afforded under Chapter 13. In this case, the Minnesota Department of Revenue's claim based on the Debtor's tax liability for years 1990 through 1992 is entitled to priority and must be paid in full pursuant to Section 1322(a)(2) of the Bankruptcy Code. The claim based on the Debtor's tax liability for earlier years is not entitled to priority and as long as the taxes are provided for under the plan, they are dischargeable pursuant to Section 1328(a) of the Bankruptcy Code. In contrast, the 1986 through 1988 taxes would not be discharged under Chapter 7 of the

7

Bankruptcy Code or under a Chapter 13 hardship discharge. 11 U.S.C. § 523(a)(1)(B)(ii). Whereas Congress chose to except such taxes from a Chapter 7or a Chapter 13 hardship discharge, Congress did not to do so in Chapter 13 where a debtor completes plan payments. Therefore, as long as the Debtor provided for the payment of his 1986 through 1988 taxes as an unsecured claim, such taxes are discharged when the Debtor completes all plan payments.

To avoid this result, the Minnesota Department of Revenue could have prepared returns for the Debtor for the years 1986 through 1988 (which are presumed correct and valid) or could have issued orders of assessment (which are final when made) under Sections 289A.35 and 289A.37 of the Minnesota Statutes at any time after the returns were due and before the Debtor's bankruptcy filing in 1993.

CONCLUSION

Federal law controls when the Debtor's Minnesota income taxes were assessed for purposes of determining the priority of the taxes under Section 507(a)(8)(A)(ii) of the Bankruptcy Code. Assessment of the Debtor's Minnesota income taxes could not have occurred before the petition date. Therefore the claim of the Minnesota Department of Revenue based on the Debtor's 1986 through 1988 income taxes is not entitled to priority pursuant to Section 507(a)(8)(A)(ii) of the Bankruptcy Code. Based on the foregoing, the bankruptcy court's order overruling the Debtor's objection to the priority status of the claim of the Minnesota Department of Revenue is reversed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT

8